*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0440**

In the Matter of the Conservatorship of:
Patricia Annette Wallace,
Protected Person.

**Filed January 25, 2016**
**Affirmed in part, reversed in part, and remanded**
**Johnson, Judge**

Hennepin County District Court
File No. 27-GC-PR-12-114

Michael D. O'Neill, Martin & Squires, P.A., St. Paul, Minnesota (for appellant Alternate Decision Makers, Inc.)

Jill A. Adkins, Henningson & Snoxell Ltd., Maple Grove, Minnesota (for respondent Patricia Annette Wallace)

Robert E. Kuderer, Erickson, Zierke, Kuderer & Madsen, P.A., Minneapolis, Minnesota (for respondent Colonial America Casualty & Surety)

Considered and decided by Cleary, Chief Judge; Connolly, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A guardian and conservator filed an annual accounting and a final accounting seeking court approval of expenses that were incurred and fees for services that were performed on behalf of a protected person. The district court allowed some expenses and some fees but disallowed other expenses totaling $13,246.26 and disallowed fees totaling

$30,994.92. The guardian and conservator appeals. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

In March 2012, Hennepin County petitioned for a guardianship and a conservatorship for Patricia Annette Wallace because of her mental condition and her inability "to care for herself or manage her finances." The petition nominated Alternate Decision Makers, Inc. (ADMI), to serve as guardian and conservator. In April 2012, the district court granted the county's petition in part, appointed ADMI to be Wallace's limited guardian, and continued the conservatorship petition. In October 2012, ADMI petitioned for appointment as emergency guardian and conservator because Wallace had been released from the hospital following hip surgery and was returned to her home, which was "totally unfit for human habitation, with animal feces and urine throughout the home, discarded adult diapers on the floor, [and] human and animal feces on [Wallace's] bed." The district court granted ADMI's petition and appointed ADMI to serve as emergency guardian and conservator until December 8, 2012. In November 2012, the district court granted ADMI's subsequent petition to be appointed permanent guardian and conservator of Wallace.

While serving as guardian and conservator, ADMI incurred significant expenses on behalf of Wallace, including more than $45,000.00 on the renovation of Wallace's home and more than $5,000.00 on medical bills. ADMI paid expenses by causing checks to issue from Wallace's checking account. In December 2013, Wallace (through counsel) petitioned for the appointment of a successor guardian and conservator. In January 2014,

2

the district court granted Wallace's petition and appointed Senior Options, Inc., as successor guardian and conservator. The district court discharged ADMI, subject to final approval of ADMI's accountings.

ADMI filed an annual accounting in January 2014 and a final accounting in April 2014. In the two accountings, ADMI sought approval of its payment of a total of $286,010.56 in expenses and approval of $62,454.67 in guardian and conservator fees and accountant fees. In August 2014, the district court scheduled a hearing on the accountings for October 2014.

Before the October 2014 hearing, ADMI's accountings were reviewed by the Conservator Account Auditing Program (CAAP), a statewide program within the Minnesota Judicial Branch that reviews conservator accountings and provides recommendations to the district courts. In this case, the CAAP auditor issued an audit report in the form of a letter to the assigned district court referee. The CAAP auditor's report noted that ADMI had not submitted cancelled checks, invoices, or receipts to provide support for ten expenses totaling $15,779.03. The CAAP auditor recommended to the district court that ADMI either be required to provide additional documentation to support those expenses or to reimburse Wallace for the total amount of those ten expenses. The CAAP auditor noted ADMI's requests for guardian and conservator fees and accountant fees but did not make any recommendation to the district court concerning those requests.

At the October 2014 hearing, ADMI called Jasmine Jonell, president of ADMI, to testify generally about the expenses and fees contained in the accountings. ADMI did not introduce any exhibits through Jonell. Jonell stated that relevant documentation could be

3

provided to Wallace's attorney or to the district court on request. ADMI also called Pat Shanahan, the contractor responsible for the renovations of Wallace's house, to testify about the work that his firm performed and the subcontractors he retained. Wallace's attorney cross-examined ADMI's witnesses but did not introduce any other evidence.

In December 2014, the district court referee signed a four-page order. The referee recommended that the district court allow all expenses except eight of the ten expenses identified by the CAAP auditor. The referee also recommended that ADMI's request for guardian and conservator fees be reduced from $20,608.92 to $3,500.00, an amount that the referee found to be reasonable in light of the complexity of the case and the limited amount of Wallace's assets. The referee further recommended that ADMI's request for accountant fees be reduced from $15,086.00 to $1,200.00, an amount that the referee found to be reasonable in light of Wallace's low income and the fact that most of her assets were in a single account. In sum, the referee recommended that ADMI's accountings be allowed in part and disallowed in part and that ADMI be required to return $44,133.22 in expenses and fees to Wallace. The referee named Western National Mutual Insurance Company as surety for ADMI's obligation to return funds to Wallace. A district court judge adopted the referee's recommendations, issued the order, and directed entry of judgment.

In February 2015, ADMI requested leave to file a motion for reconsideration. *See* Minn. R. Gen. Pract. 115.11. ADMI argued that it had provided sufficient support for its expenses or, alternatively, that it should be allowed to submit additional documentation. In addition, ADMI argued that the district court had erred by naming the wrong company as surety. By letter, the referee denied ADMI's request for leave to file a motion for

4

reconsideration. The referee's letter noted, however, that the district court's order had misidentified the surety, and the referee stated that an amended order would be forthcoming. On March 11, 2015, ADMI filed a notice of appeal. On the following day, the district court issued an amended order naming Colonial America Casualty and Surety Company as surety instead of Western National Mutual Insurance Company.

## D E C I S I O N

### I. Disallowed Expenses and Fees

ADMI argues that the district court erred by disallowing six of the expenses for which it sought approval, by disallowing some of the fees it sought as compensation for its services as guardian and conservator, and by disallowing fees incurred by a third-party accountant. No responsive brief was filed.

A guardian or conservator is entitled to reimbursement of necessary expenses incurred on behalf of a ward or protected person and to compensation for necessary services performed for the benefit of a ward or protected person. Minn. Stat. § 524.5-502(c) (2014). Both a guardian and a conservator's compensation is paid from the protected person's estate and is subject to approval by the district court. *Id.*; *see also In re Guardianship of Doyle*, 778 N.W.2d 342, 347-48 (Minn. App. 2010). The district court's approval is prompted by the guardian and conservator's filing of an annual accounting report, which must list the receipts, disbursements, and distributions occurring during the relevant period. *See* Minn. Stat. §§ 524.5-316(a)(7), 524.5-420(a)-(b) (2014). A conservator also must file a final accounting upon being discharged. Minn. Stat. § 524.5-420(a).

5

**A.     Expenses**

If a district court "determines that a . . . conservator . . . has incurred necessary expenses for the benefit of the ward or protected person, the court may order reimbursement . . . to be paid from the estate of the protected person." Minn. Stat. § 525.5-502(c); *see also* Minn. Stat. § 524.5-417(c)(i) (stating that conservator has "duty to pay the reasonable charges for the support, maintenance, and education of the protected person"). This court applies an abuse-of-discretion standard of review to the district court's decision to approve the reimbursement of necessary expenses. *Doyle*, 778 N.W.2d at 347 (citing *In re Estate of Baumgartner*, 274 Minn. 337, 346, 144 N.W.2d 574, 580 (1966)).

In this case, the district court allowed expenses totaling $272,872.26. But the district court disallowed eight expenses totaling $13,138.30, and required ADMI to repay that amount to Wallace, on the ground that ADMI did not provide documentation to support those expenses. ADMI contends on appeal that the district court erred by disallowing six expenses, for four reasons.

First, ADMI contends that the district court erred because ADMI provided the district court with sufficient documentation for the challenged expenses by completing the accounting reports that are required by statute. The statute provides, "A [conservator's accounting] report must state or contain . . . a listing of the receipts, disbursements, and distributions during the reporting period." Minn. Stat. § 524.5-420(b). That statute, however, does not state that a listing of receipts, disbursements, and distributions is sufficient for purposes of allowing expenses. *See id.* A different statute governs the issue of the reimbursement of a conservator's payment of expenses; that statute provides that an

6

expense may be reimbursed if it was "necessary" for the conservator to incur the expense. *See* Minn. Stat. § 525.5-502(c). A district court may not be able to determine whether an expense is necessary based solely on a conservator's accounting report, which typically follows a template that requires only summary information and sometimes consolidates multiple expenses into a single line-item. A district court does not necessarily abuse its discretion by refusing to rely on a template that includes only summary information when deciding whether to allow expenses, especially in a case involving hundreds of thousands of dollars in expenses. Thus, ADMI's accounting reports, by themselves, do not compel the conclusion that ADMI incurred necessary expenses on behalf of Wallace.

Second, ADMI contends that the district court erred because the evidence ADMI introduced at the hearing, especially the testimony of its president, Jonell, is sufficient to justify the six challenged expenses. Our review of the district court record indicates that Jonell's testimony was rather general, vague, and conclusory, proving little more than the mere fact that expenses were incurred and were paid, without providing details regarding the necessity of the expenses. She sometimes qualified her testimony by noting that she was not employed by ADMI when it provided services to Wallace. The district court apparently was not persuaded by Jonell's testimony or determined that her testimony did not bear directly on whether the challenged expenses were necessary. We note that, in this context, oral testimony may be less valuable to the fact-finder than contemporaneous documentation. *See Redies v. Cosner*, 2002 MT 86, ¶ 38, 309 Mont. 315, 327 48 P.3d 697, 704-05 (2002) (noting preference for independently verifiable documentation over oral testimony). However, ADMI's argument is valid with respect to one of the six expenses

7

at issue. ADMI introduced evidence through Shanahan, the contractor who performed renovations on Wallace's home, including both detailed testimony and documentary evidence. Shanahan's testimony and the exhibits establish that ADMI necessarily incurred $2,650.00 in expenses that the district court disallowed. In essence, the testimony of a nonparty served the same purpose as documentation. Thus, the district court did not err by rejecting Jonell's testimony with respect to five of the six challenged expenses but erred by rejecting the evidence presented through Shanahan with respect to one of the six challenged expenses.

Third, ADMI contends that the district court erred because ADMI provided additional documentation to Wallace's counsel and Wallace did not object to ADMI's request for reimbursement of expenses. Assuming without deciding that Wallace did not object,[1] the absence of an objection does not relieve a conservator of its obligation to prove the necessity of the expenses for which it seeks approval. The conservator bears the burden of proving that expenditures are appropriate. *See Doyle*, 778 N.W.2d at 347. Furthermore, the district court has an obligation to preserve a protected person's property and to ensure that the person's estate is not dissipated. *See id.* Accordingly, even in the absence of an objection, a district court may disallow the reimbursement of expenses to a conservator.

---

[1]It appears that Wallace objected to ADMI's accountings but did not object to any of the six expenses that are at issue on appeal. During the hearing, Wallace's counsel objected generally to ADMI's accountings and referred to a few expenses with specificity. At the conclusion of the hearing, the referee directed Wallace's attorney to submit a letter identifying the objections that Wallace wished to withdraw. After the hearing, Wallace's attorney submitted a letter to the district court in which she noted continuing objections to some expenses and specifically withdrew her objection to only one of the six challenged expenses, the payment to Shanahan that we have determined was proved to be necessary.

*See id.* at 347-48. Thus, the district court did not err on the ground that Wallace did not object to ADMI's request for reimbursement of expenses.

Fourth, ADMI contends that the district court erred by not requesting any additional evidence from ADMI to substantiate its request for reimbursement of expenses. ADMI cites no authority for the proposition that the district court has an obligation to identify shortcomings in a conservator's evidence before disallowing expenses. Again, a conservator bears the burden of proving an entitlement to expenses. *See id.* at 351. A district court may communicate to counsel that additional evidence is necessary to satisfy the burden of proof, but there is no requirement that the district court do so. It is important to note that, in this case, the CAAP auditor recommended that ADMI "provide documentation to support [the] expenses or repay [them]." The CAAP audit program is part of the judicial branch. The CAAP audit program allows a thorough and detailed review of a conservator's accounting by a trained professional, who provides a recommendation on which a district court may, in its discretion, rely. *See* Minn. Stat. § 524.420(h); *see also* Minnesota Judicial Branch, *Conservator Account Auditing Program (CAAP)*, http://mncourts.gov/Help-Topics/Guardianship-and-Conservatorship.aspx (last visited Jan. 13, 2016). In this case, the auditor's recommendation put ADMI on notice that its documentation was potentially lacking and that additional documentation might be required. But ADMI did not heed the warning. Having received notice of the CAAP auditor's recommendation, ADMI cannot argue that it did not have an adequate opportunity to introduce evidence to justify the six challenged expenses. Thus, the district court did

9

not err by disallowing ADMI's expenses without requesting additional evidence from ADMI.

Therefore, the district court did not err with respect to five of the six challenged expenses, totaling $7,690.13, but erred with respect to one of the six challenged expenses, in the amount of $2,650.00.

**B.    Fees**

If a district court "determines that a guardian or conservator . . . has rendered necessary services . . . for the benefit of the ward or protected person, the court may order reimbursement or compensation to be paid from the estate of the protected person." Minn. Stat. § 525.5-502(c).   In determining whether a guardian or conservator's fees are appropriate, a district court must consider several factors: "'(1) the time and labor required; (2) the experience and knowledge of the [guardian or conservator]; (3) the complexity and novelty of problems involved; (4) the extent of the responsibilities assumed and the results obtained; and (5) the sufficiency of assets properly available to pay for the services.'" *Doyle*, 778 N.W.2d at 351 (quoting Minn. Stat. § 525.515(b) (2008)).   "The burden of providing evidence to support fee requests lies with the guardian/conservator." *Id.* (citing *Butt v. Schmidt*, 747 N.W.2d 566, 576 (Minn. 2008)).   This court applies a clear-error standard of review to a district court's findings concerning the value of a guardian or conservator's necessary services. *Id.*  We apply an abuse-of-discretion standard of review to a district court's ultimate decision to allow or disallow fees to a guardian or conservator. *Id.* at 350-51 (citing *Baumgartner*, 274 Minn. at 346, 144 N.W.2d at 580).

10

### 1. Guardian and Conservator's Fees

ADMI sought guardian and conservator fees in the amount of $20,608.92. The district court determined that the fees sought by ADMI were excessive in light of the limited amount of Wallace's assets and the complexity of Wallace's case. The district court reduced ADMI's fees to $3,500.00.

ADMI contends that the district court erred by disallowing guardian and conservator fees for essentially the same four reasons that it urged with respect to expenses and for one additional reason. We reject ADMI's first and second contentions for essentially the same reasons that are described above. Furthermore, we generally approve of the district court's suggestion that detailed billing statements are essential to the determination whether a guardian or conservator has "rendered necessary services . . . for the benefit of the ward or protected person." Minn. Stat. § 524.5-502(c). In the analogous situation of a request for attorney fees, a district court cannot determine whether services were necessary without detailed information concerning the nature of the services provided and the amount of time required to provide those services. *See* Minn. R. Gen. Pract. 119.01-02 (requiring detailed documentation supporting attorney fees requests); *see also Borchert v. Borchert*, 279 Minn. 16, 21-22, 154 N.W.2d 902, 906-07 (1967) (remanding for reconsideration of award of attorney fees based on additional and more particular evidence of "the amount of work done and the value of the services rendered"). There is no apparent reason why a different approach should prevail with respect to guardian or conservator fees, especially in light of the district court's obligation to ensure that the protected person's assets are not dissipated. *Doyle*, 778 N.W.2d at 347. This is especially true in a case involving a professional

guardian and conservator, which can be expected to have established systems for recording the services provided to a protected person and for tabulating their value.

Our analysis of ADMI's third and fourth contentions with respect to guardian and conservator fees is, however, somewhat different from our analysis of those contentions with respect to expenses. The district court appears to have altered the usual procedures by which ADMI could have satisfied its burden of proof. At the conclusion of the hearing, the referee asked Wallace's attorney whether she would like to receive additional documentation from ADMI. After Wallace's attorney answered in the affirmative, the referee directed her and ADMI's attorney to confer to ensure that ADMI had provided all documentation to Wallace, and the referee further directed Wallace's attorney to submit a letter to the district court within 10 days to state whether Wallace was withdrawing any objections to ADMI's accountings. The referee stated that, after 10 days, the district court would consider the parties' positions "based on the evidence that's been presented." The referee's comments are ambiguous as to whether it was necessary for ADMI to submit additional evidence to the district court or whether it was required merely to provide additional evidence to Wallace. The referee's comments also are ambiguous as to whether ADMI would have an opportunity to present additional evidence to the district court after Wallace submitted a letter to the district court. By directing ADMI to provide additional documentation to Wallace, but not directing ADMI to provide additional documentation to the district court, the referee's comments could be understood to mean that ADMI was not permitted to submit additional evidence at that time. But the referee disallowed a substantial part of ADMI's fee requests without receiving additional evidence from ADMI.

12

Without such evidence, the district court had no means of resolving Wallace's objections on the merits.

ADMI's additional contention is that the district court erred by denying its request for leave to file a motion to reconsider, in which ADMI specifically expressed its desire to introduce additional evidence. A district court's denial of a request for leave to file a motion to reconsider is subject to an abuse-of-discretion standard of review. *Anderson v. Rengachary*, 608 N.W.2d 843, 846 (Minn. 2000); *Goerke Family P'ship v. Lac Qui Parle-Yellow Bank Watershed Dist.*, 857 N.W.2d 50, 52-53 (Minn. App. 2014). The referee denied ADMI's request for reconsideration on the ground that ADMI had failed to present additional evidence at earlier stages of the case. But, as noted above, the referee had directed ADMI's attorney to follow a different procedure, and the referee's comments are unclear as to whether ADMI was permitted to introduce additional evidence after the hearing. At the least, the unusual post-hearing procedures created confusion as to whether and when ADMI could submit additional evidence. The absence of additional evidence is significant because it may impede a proper consideration of the issues. A district court reviewing a guardian and conservator's request for fees must make findings and conclusions that are "detailed, specific, and sufficient enough to enable meaningful review by this court." *Doyle*, 778 N.W.2d at 353 (quotation omitted). In *Doyle*, the district court made general statements about deficiencies in the guardian and conservator's billing entries. *Id.* This court noted that the district court did not "state specifically which of [the guardian and conservator's] numerous itemized charges it is disallowing" such that "it is not possible for this reviewing court to determine whether the district court could

13

reasonably be more specific based on the record before it or whether a generalized adjustment was the only practical way for the district court to proceed." *Id.* Thus, this court reversed and remanded "with instructions to clarify the relationship of [the generalized] adjustment to other disallowed or criticized charges and otherwise allocate the disallowed fees or to make findings that such specificity is not possible." *Id.*

In this case, the district court did not make detailed findings concerning why ADMI's fee request should be drastically reduced from approximately $20,000.00 to $3,500.00. Wallace's attorney had made rather detailed objections, but the district court did not state whether those objections were meritorious and was unable to do so without the evidence underlying Wallace's objections, which the referee specifically invited. Consequently, we are unable to conduct meaningful appellate review. *See id.*

In light of the unusual circumstances of this case, we conclude that the district court erred by denying ADMI's request for leave to file a motion for reconsideration and to introduce additional evidence concerning the necessity of the services it provided to Wallace.

### 2.      Accountant Fees

ADMI sought fees for work performed by an outside accountant in the amount of $15,086.00. The district court determined that the accountant fees sought by ADMI were improper because ADMI did not submit detailed billing statements of the accountant and because the fees were excessive. The district court reduced the accountant fees to $1,200.00.

ADMI reiterates the contentions that it made concerning both the challenged expenses and the guardian and conservator fees. We resolve those contentions in the same manner as ADMI's contentions concerning guardian and conservator fees. In light of the unusual circumstances of this case, we conclude that the district court erred by denying ADMI's request for leave to file a motion for reconsideration and to introduce additional evidence concerning the necessity of the services that the accountant provided to ADMI and Wallace.

## II. Surety

ADMI also argues that the district court erred by not accurately identifying in its December 2014 order the company appointed to serve as surety. ADMI acknowledges that the March 12, 2015 amended order identified the correct company but suggests that the amended order is ineffective because it was issued after the notice of appeal, which deprived the district court of jurisdiction over the matter. We need not determine whether the amended order is effective because, in light of the referee's concession in the letter denying reconsideration, we conclude that ADMI is correct that the district court erred by identifying Western National Mutual Insurance Company, not Colonial America Casualty and Surety Company, as surety in the December 2014 order.

In sum, we conclude that the district court did not err by disallowing five of the six challenged expenses, erred by disallowing one of the six challenged expenses, erred by denying ADMI's request for leave to file a motion for reconsideration and to introduce additional evidence concerning guardian and conservator fees and accountant fees, and erred by misidentifying the company that is the surety for ADMI's obligation to return

15

funds to Wallace.  Therefore, we affirm in part, reverse in part, and remand for further proceedings.  On remand, the district court shall allow the $2,650.00 expense related to the renovation work performed by Shanahan, provide ADMI an opportunity to introduce additional documentary evidence, make findings and conclusions of law with respect to the necessity of the services rendered to Wallace by ADMI and by the accountant, and properly identify the company that is the surety for the judgment against ADMI.

**Affirmed in part, reversed in part, and remanded.**